# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

Nos. 19-1586
19-1640

### PROJECT VERITAS ACTION FUND,
*Plaintiff-Appellee / Cross-Appellant*

*v.*

### RACHAEL S. ROLLINS, IN HER OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR SUFFOLK COUNTY,
*Defendant-Appellant / Cross-Appellee*

No. 19-1629

### K. ERIC MARTIN & RENE PEREZ,
*Plaintiffs-Appellees*

*v.*

### RACHAEL S. ROLLINS, IN HER OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR SUFFOLK COUNTY,
*Defendant-Appellant*

### WILLIAM G. GROSS, IN HIS OFFICIAL CAPACITY AS POLICE COMMISSIONER FOR THE CITY OF BOSTON,
*Defendant*

### ON APPEAL FROM JUDGMENTS OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

## RESPONSE-REPLY BRIEF OF D.A. RACHAEL S. ROLLINS

MAURA HEALEY
  *Attorney General of Massachusetts*
Eric A. Haskell, Bar No. 122457
  *Assistant Attorney General*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2855
eric.haskell@mass.gov

November 14, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

SUMMARY OF ARGUMENT ................................................................................1

ARGUMENT ..........................................................................................................3

    I.    The Plaintiffs' Arguments Do Not Undermine the Conclusion
        that Their Claims Are Unripe. ............................................................... 3

        A.    Even if Ripeness Standards Are, in Some Respects,
                Relaxed for First Amendment Claims, a Federal Court
                May Not Issue the Advisory Opinion that the Plaintiffs
                Seek. ............................................................................................3

        B.    The Plaintiffs' Claims Are Not Ripe Because They Are
                Based on Speculation and Abstraction, Rather than
                Concrete Facts and Circumstances. ............................................7

    II.    The Anti-Wiretap Statute Readily Withstands Intermediate
        Scrutiny. ............................................................................................ 10

        A.    The Statute Advances a Significant Governmental
                Interest in Assuring that All Persons Are Aware of When
                They Are Being Recorded. .......................................................11

        B.    The Statute Is Narrowly Tailored to Serve the
                Commonwealth's Interest. .......................................................15

             1.    The Statute Is Narrowly Tailored With Respect to
                     Communications Made By Police Officers in
                     Public Spaces. ................................................................16

             2.    The Statute Is Narrowly Tailored With Respect to
                     Communications Made Without a Reasonable
                     Expectation of Privacy. ..................................................17

C. The Statute Preserves Adequate Alternative Channels for Communication. ..........................................................................18

III. The District Court Properly Dismissed PVA's Facial Overbreadth Claim. ............................................................. 21

CONCLUSION .................................................................................24

CERTIFICATES .................................................................................25

# TABLE OF AUTHORITIES

**Cases**

Aetna v. Haworth,
    300 U.S. 227 (1937)................................................................. 4

Am. Civil Liberties Union v. Alvarez,
    679 F.3d 583 (7th Cir. 2012) ................................................ 8

Anderson v. Milwaukee County,
    433 F.3d 975 (7th Cir. 2006) .............................................. 23

Babbitt v. United Farm Workers Nat'l Union,
    442 U.S. 289 (1979) ....................................................... 5, 6

Burson v. Freeman,
    504 U.S. 191 (1992)........................................................... 12

Commonwealth v. Publicover,
    327 Mass. 303 (1951) ....................................................... 13

Dietemann v. Time, Inc.,
    449 F.2d 245 (9th Cir. 1971) .............................................. 18

Felker v. R.I. College,
    203 A.3d 433 (R.I. 2019)...................................................... 8

Fla. Bar v. Went For It, Inc.,
    515 U.S. 618 (1995)........................................................... 11

Gericke v. Begin,
    753 F.3d 1 (1st Cir. 2014) .................................................... 7

Glik v. Cunniffe,
    655 F.3d 78 (1st Cir. 2011) ........................................... 7, 19

Higginbotham v. City of N.Y.,
    105 F. Supp. 3d 369 (S.D.N.Y. 2015) .................................................. 8

In re Financial Oversight & Management Board,
    916 F.3d 98 (1st Cir. 2019) ....................................................... 5, 10

In re Financial Oversight & Management Board,
    919 F.3d 638 (1st Cir. 2019) ............................................................ 5

Josephine Havlak Photog., Inc. v. Village of Twin Oaks,
    864 F. 3d 905 (8th Cir. 2017) ......................................................... 23

Kines v. Day,
    754 F.2d 28 (1st Cir. 1985) ............................................................. 6

Lieberman v. KCOP Television, Inc.,
    110 Cal. App. 4th 156, 1 Cal. Rptr. 3d 536
    (2d Dist. 2003) ........................................................................ 14

Mangual v. Rotger-Sabat,
    317 F.3d 45 (1st Cir. 2003) ............................................................. 8

McCullen v. Coakley,
    573 U.S. 464 (2014)..................................................................... 17

McDaniel v. Atlanta Coca-Cola Bottling Co.,
    60 Ga. App. 92, 2 S.E.2d 810 (1939) ................................................ 13

Members of City Council v. Taxpayers for Vincent,
    466 U.S. 789 (1984)..................................................................... 22

Nat'l Amusements v. Town of Dedham,
    43 F.3d 731 (1st Cir. 1995)......................................................... 17, 22

N.Y. State Club Ass'n v. City of N.Y.,
    487 U.S. 1 (1988)..................................................................... 22, 23

Renne v. Geary,
     501 U.S. 312 (1991) ........................................................................ 6, 22

Rhodes v. Graham,
     28 Ky. 225, 37 S.W.2d 46 (1931)...................................................... 13

R.I. Ass'n of Realtors, Inc. v. Whitehouse,
     199 F.3d 26 (1st Cir. 1999)............................................................... 10

Rideout v. Gardner,
     838 F.3d 65 (1st Cir. 2016)................................................................ 12

Showtime Ent'm't LLC v. Town of Mendon,
     769 F.3d 61 (1st Cir. 2014)................................................................ 11

Shulman v. Group W Prods., Inc.,
     18 Cal. 4th 200, 955 P.2d 469 (1998)................................................. 18

Sindicato Puertorriqueno de Trabajadores
     v. Fortuno, 699 F.3d 1 (1st Cir. 2012).................................................. 4

Sullivan v. City of Augusta,
     511 F.3d 16 (1st Cir. 2007) ................................................................. 4

Texas v. United States,
     523 U.S. 296 (1998) ............................................................................ 5

Thayer v. Worcester Post Co.,
     284 Mass. 160 (1933) ........................................................................ 13

United States v. Sayer,
     748 F.3d 425 (1st Cir. 2014)......................................................... 22, 23

United States v. Williams,
     553 U.S. 285 (2008)........................................................................... 22

Virginia v. Hicks,
     539 U.S. 113 (2003)........................................................................... 23

Ward v. Rock Against Racism,
    491 U.S. 781 (1989)............................................................ 11

Wash. State Grange v. Wash. State Republican Party,
    552 U.S. 442 (2008)............................................................ 21

## Legislation and Legislative Materials

1968 Mass. Senate Rep. No. 1132 ................................................ 15

## Other Authorities

Francis Wharton, Criminal Law (12th ed. 1932)........................... 13

Restatement (Second) of Torts § 652B (1977) ............................. 14

## SUMMARY OF ARGUMENT

Neither the brief of Project Veritas Action Fund, Inc. ("PVA") nor that of Eric Martin and Rene Perez ("Martin") demonstrates that their claims are ripe.  <u>See</u> pp. 3-10 below.  All plaintiffs stand on the proposition that ripeness requirements are relaxed for free speech claims, but any such relaxation does not relieve the plaintiffs of the need to satisfy core Article III requirements such as the prohibition on advisory opinions.  None of the plaintiffs cites specific conduct in which it intends to engage.  But, because the plaintiffs' claimed "right to surreptitiously record" will invariably depend on the facts surrounding a particular recording, and plaintiffs do not allege such facts, this Court cannot apply the law except by reference to speculation, abstraction, and hypothetical facts—that is, through a prohibited advisory opinion.  As such, the plaintiffs' claims are not ripe for adjudication.

Further, neither brief has undermined the conclusion that the Anti-Wiretap Statute readily withstands intermediate scrutiny, the standard applicable here.  <u>See</u> pp. 10-17 & 18-24 below.  The District Attorney values public scrutiny of government affairs, including that accomplished through recordings.  As explained in her principal brief, the Anti-Wiretap Statute does not prohibit all recordings, just those made in a surreptitious manner without the awareness of the person(s) recorded; and the Commonwealth's significant interest in the Anti-Wiretap Statute

1

is to assure that its citizens are aware of when they are being recorded. Contrary to the plaintiffs' arguments, that interest is substantiated by "long history, substantial consensus, and simple common sense," and is not limited either to protecting police officers or to protecting civilians who interact with a police officer. Moreover, the Statute is narrowly tailored to the Commonwealth's interest in assuring that its citizens are aware of when they are being recorded, a conclusion that, again, is not limited to only certain citizens and is not diminished by Martin's contention that alternative methods of regulation are available. And the Statute preserves adequate alternative channels for gathering information in aid of expressive activity, and specifically does not interfere with undercover journalism that does not involve surreptitious audio recording, or with citizens' rights to openly record police officers in public.

Finally, PVA cannot succeed on its cross-appeal. This Court should affirm the dismissal of PVA's claim that the Anti-Wiretap Statute cannot be applied to communications made without a reasonable expectation of privacy, both because the Commonwealth's interest in the Statute does not depend on the presence of a Fourth Amendment-style expectation of privacy and because intermediate scrutiny does not require the Statute to use the least restrictive means of serving the Commonwealth's interest. See Part II(B)(2), pp. 17-18 below. This Court should also affirm the dismissal of PVA's claim that the Statute is facially overbroad, both

because PVA has failed to demonstrate that the Anti-Wiretap Statute will affect non-parties in a manner other than how it affects PVA itself and because PVA has made no record by which it might demonstrate that any impermissible applications of the Statute are out of proportion to its legitimate applications.  See Part III, pp. 21-24 below.

## ARGUMENT

### I.     The Plaintiffs' Arguments Do Not Undermine the Conclusion that Their Claims Are Unripe.

As the District Attorney argued in her principal brief (pp. 23-36),[1] the plaintiffs' claims are unripe because the facts they offer are too sparse to permit a federal court to apply governing legal principles without resort to speculation, abstraction, and hypothetical facts.  As such, both plaintiffs seek an advisory opinion.  Neither plaintiff's arguments undermine this conclusion.

### A.     Even if Ripeness Standards Are, in Some Respects, Relaxed for First Amendment Claims, a Federal Court May Not Issue the Advisory Opinion that the Plaintiffs Seek.

Rather than argue that their requested ruling is not advisory, both plaintiffs (PVA p. 19; Martin p. 19) stand on the proposition that ripeness requirements are relaxed for free speech claims.  But "the relaxation in First Amendment cases of certain prudential standing requirements does not mean that the plaintiffs can

---

[1] This brief cites the brief of a specified party or amicus curiae as "p. [page number]," the Addendum to the District Attorney's principal brief as "Add. [page number]," and the Record Appendix as "A. [page number]."

dispense with the need to meet core Article III standing principles." <u>Sullivan v. City of Augusta</u>, 511 F.3d 16, 25 (1st Cir. 2007). Even in First Amendment cases, "constitutional ripeness requirements"—including "the prohibition against advisory opinions"—are not relaxed. <u>Sindicato Puertorriqueno de Trabajadores v. Fortuno</u>, 699 F.3d 1, 8 (1st Cir. 2012).[2] This is true even though "wholly prudential" ripeness requirements, such as the hardship of the court's withholding decision, may be relaxed for First Amendment claims. <u>Id</u>. at 8-9. Thus, Martin is incorrect to suggest (pp. 18, 21-22) that a plaintiff's strong showing of prudential hardship can overcome an inadequate showing of constitutional fitness for adjudication. Neither Martin nor PVA cite a case in which a federal court agreed to ignore Article III requirements and issue an advisory opinion simply because the suit involved a free speech claim.

Because Article III requirements limit the Court's jurisdiction in all cases, including those concerning the First Amendment, it is no answer for the plaintiffs (PVA pp. 22-23; Martin p. 25) to shrug off the District Attorney's citation of non-free speech ripeness decisions as "inapplicable." Each of those decisions found a claim to be unripe because, contrary to Article III, adjudication would have

---

[2] Similarly, a federal court cannot entertain a claim for declaratory relief unless constitutional ripeness requirements are met. <u>Aetna v. Haworth</u>, 300 U.S. 227, 240-41 (1937) (controversy "must be definite and concrete . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts").

required the court to issue an advisory opinion based on hypothesis and speculation.  See Texas v. United States, 523 U.S. 296, 301 (1998); In re Financial Oversight & Management Board, 916 F.3d 98, 111-12 (1st Cir. 2019) ("In re Fin. Oversight & Mgmt. Bd. I"); In re Financial Oversight & Management Board, 919 F.3d 638, 646 (1st Cir. 2019) ("In re Fin. Oversight & Mgmt. Bd. II").  In each case, where Article III limitations on the court's power were not satisfied, the nature of the legal claim was not material to the lack of justiciability.

The District Attorney has also demonstrated, by citation of free speech ripeness decisions, that the plaintiffs' claims should have been dismissed.  Martin inaccurately characterizes (pp. 25-26) those decisions as turning on the absence of a "credible threat of enforcement" of the challenged statute; in fact, each case was non-justiciable because, like the present cases, it involved hypothetical or speculative claims lacking a concrete factual record. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 304 (1979) (deeming pre-enforcement challenge to labor "access" provision non-justiciable, not because of uncertainty whether provision would be enforced, but rather based on the "[m]ore important[]" circumstance that adjudication "depends inextricably upon the attributes of the situs involved" and, absent plaintiff's identification of any particular site, "hypothesi[s]" is the "only . . . basis [upon which] the constitutional claim could be

adjudicated at this time");[3] <u>Renne v. Geary</u>, 501 U.S. 312, 321-23 (1991) (deeming pre-enforcement challenge to ordinance prohibiting political parties from endorsing candidates for nonpartisan office non-justiciable because plaintiffs offered "no factual record of an actual or imminent application of [the ordinance] sufficient to present the [free speech] issues in clean-cut and concrete form");[4] <u>Kines v. Day</u>, 754 F.2d 28, 31 (1st Cir. 1985) (making no mention of whether prison threatened to enforce rule limiting sources from which inmates could receive books, and instead resting finding of non-justiciability on the fact that "[s]peculation, rather than solid evidence, would have been the only basis" to sustain plaintiff's claim). These cases provide firm footing for the conclusion that plaintiffs' claims are unripe.

The foregoing cases also show that PVA is wrong to contend (p. 20) that the mere allegation that a challenged law has chilled protected expression will, "by definition," satisfy ripeness requirements. This contention additionally fails because PVA seeks to support it with decisions addressing facial overbreadth challenges, which are explicitly brought to vindicate the interests of those who refrain from speaking. <u>See</u> pp. 21-24 below. The contention is plainly incorrect as

---

[3] PVA focuses (pp. 23, 30-31) on a different claim in <u>Babbitt</u>, one that is not apposite to the present cases.

[4] For its part, PVA describes (p. 24) <u>Renne</u> as standing for the proposition that, "where a party fails to indicate what they wish to do, a claim will not be justiciable," a description that encapsulates the District Attorney's point.

to traditional facial and as-applied challenges to a statute, such as those in the present cases, which courts regularly analyze under the ripeness standards discussed above.

**B.  The Plaintiffs' Claims Are Not Ripe Because They Are Based on Speculation and Abstraction, Rather than Concrete Facts and Circumstances.**

The District Attorney demonstrated in her principal brief (pp. 26-31) that, as with the "right to openly record" in public recognized in <u>Glik v. Cunniffe</u>, 655 F.3d 78 (1st Cir. 2011), the coverage of plaintiffs' proposed "right to surreptitiously record" must depend on the facts and circumstances surrounding a particular recording.  Neither plaintiff makes any meaningful attempt to rebut that argument.[5] Specifically, neither plaintiff addresses the circumstances thought by other courts to be material to the existence of a right to openly record and whether limitations on that right may, similarly, foreclose a right to surreptitiously record.  <u>Cf</u>. <u>Gericke v. Begin</u>, 753 F.3d 1, 7-8 (1st Cir. 2014) (discussing "reasonable restrictions" on the right to videotape police officers performing their duties in public, applicable "when the circumstances justify them").  And neither plaintiff engages with the

---

[5] PVA asserts (p. 34) in conclusory fashion that recording "is an undifferentiated right" that applies equally in all circumstances, but that contention ignores this Court's recognition that, in particular circumstances, "reasonable restrictions" apply even to a right to openly record police officers in public. <u>See</u> <u>Gericke v. Begin</u>, 753 F.3d 1, 7-8 (1st Cir. 2014).

unique risks of surreptitious recording that the Legislature took into account when enacting the Anti-Wiretap Statute and that courts have recognized in First Amendment decisions.[6]

PVA makes no attempt to argue that it has provided facts and circumstances of its prospective surreptitious recordings sufficient for a court to adjudicate its claim without indulging speculation. Instead, citing Mangual v. Rotger-Sabat, 317 F.3d 45 (1st Cir. 2003), PVA argues (p. 31) that it need only allege that it intends to continue its work and that it has been chilled by the Anti-Wiretap Statute. But the plaintiff in Mangual presented a concrete claim that did not turn on the particular facts. See 317 F.3d at 53-54 (after being threatened with prosecution under Puerto Rico's criminal libel statute, reporter challenged statute on its face by invoking categorical principles laid down in cases such as N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964) and Gertz v. Robert Welch, Inc., 418 U.S. 323

---

[6] See Am. Civil Liberties Union v. Alvarez, 679 F.3d 583, 607 n.13 (7th Cir. 2012); Higginbotham v. City of N.Y., 105 F. Supp. 3d 369, 381 (S.D.N.Y. 2015); Felker v. R.I. College, 203 A.3d 433, 451-52 (R.I. 2019).

(1974)).  Here, in contrast, PVA invokes a First Amendment right whose contours are fact-dependent, yet provides no facts.[7]

Martin, for his part, argues (pp. 23-24) that he has provided sufficient factual detail to permit adjudication of his claims.  But, in fact, he refers only to broad categories of conduct in which he and/or Perez wish to engage: to record "police officers performing their duties in public spaces," "police officers performing their duties in public while interacting with homeless individuals and vendors on the streets and sidewalks" (A. 1079), "police officers conducting pedestrian stops or traffic stops on the street" (A. 1048), and "police officers when they are generally performing their duties in public" (A. 1081).  Martin argues that these descriptions "shed meaningful light" on his prospective surreptitious recordings, but he does not limit his claim to those descriptions.  Instead, both Martin (p. 23) and Perez (p. 11, A. 1452) insist that they wish to surreptitiously record police officers whenever "it [is] legal to do so," a circular contention that gives this Court nothing to which to apply the law.  As such, their claims "involve[] too remote and abstract an

---

[7] Illustrating this shortcoming, amicus curiae Electronic Frontier Foundation asserts (pp. 28 n.51 & 29 n.52) that the present cases do not involve "[r]ecording with unusually sensitive equipment [that] may intrude on low-volume conversations in public" or "recording that is automated and pervasive, which poses special threats to privacy."  To the contrary, nothing in the record suggests that such recordings are outside the scope of the plaintiffs' claims or the District Court's judgment.  For example, Perez refused to state in response to interrogatories and deposition questions that his sought-after relief excluded the use of sound amplification technology.  A. 950, 1094-95.

inquiry for the proper exercise of the judicial function." In re Fin. Oversight &

Mgmt Bd. I, 916 F.3d at 112 (quoting Int'l Longshoremen's & Warehousemen's

Union, Local 37 v. Boyd, 347 U.S. 222, 224 (1954)).

Nor can Martin avoid his claims' lack of ripeness by suggesting (p. 19) that

"[p]re-enforcement suits always involve a degree of uncertainty about future

events." "To establish ripeness in a pre-enforcement context, a party must have

concrete plans to engage immediately (or nearly so) in an arguably proscribed

activity. This gives a precise shape to disobedience, posing a specific legal

question fit for judicial review." R.I. Ass'n of Realtors, Inc. v. Whitehouse, 199

F.3d 26, 33 (1st Cir. 1999). Here, the plaintiffs do not precisely shape their

ostensible disobedience, or cite to specific conduct in which they immediately

intend to engage. For these reasons, they have not met their burden to demonstrate

that their claims are ripe, and thus justiciable, under Article III.

## II.     The Anti-Wiretap Statute Readily Withstands Intermediate Scrutiny.

As the District Court found, the Anti-Wiretap Statute is content-neutral and

thus subject to intermediate judicial scrutiny. Add. 73-74 (citing Jean v. Mass.

State Police, 492 F.3d 24, 29 (1st Cir. 2007)). Thus PVA's argument that strict

scrutiny applies (pp. 38-40) is unavailing. Intermediate scrutiny requires a

reviewing court to analyze whether a challenged law: (1) serves a significant

governmental interest; (2) is narrowly tailored to do so; and (3) preserves ample

alternative channels for expression.  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  And because the plaintiffs bring facial challenges to the Statute, Add. 71-73, they must demonstrate that the law lacks "a plainly legitimate sweep" to the extent of the reach of their claims.  See Showtime Ent'm't LLC v. Town of Mendon, 769 F.3d 61, 70 (1st Cir. 2014) (where plaintiff seeks invalidation of the challenged law, not just a change in its application to the plaintiff, "[the plaintiff] must prove that the [statute] do[es] not have a plainly legitimate sweep").

### A.   The Statute Advances a Significant Governmental Interest in Assuring that All Persons Are Aware of When They Are Being Recorded.

In her principal brief (p. 42), the District Attorney explained that the interest advanced in the Anti-Wiretap Statute is to assure that each citizen is aware of when he or she is being recorded.  In evaluating the significance of this governmental interest, this Court must remain focused on the "precise interest[] put forward by the State," which cannot be "supplant[ed] . . . with other suppositions."  Fla. Bar v. Went For It, Inc., 515 U.S. 618, 624 (1995) (reviewing a restriction on commercial speech under intermediate judicial scrutiny).  Despite this guidance in Florida Bar, PVA (p. 43) initially misconstrues the Commonwealth's interest as the protection of "privacy," which PVA defines as "free[dom] from public attention to, intrusion into, or interference with one's acts or decisions."  But this form of "privacy" is not the interest underlying the Anti-Wiretap Statute, because the statute does not

11

purport to regulate open recordings, even though they doubtless can call public attention to the persons recorded.

Rather, the law protects a specific type of privacy; the interest advanced by the Anti-Wiretap Statute is in assuring that each citizen is aware of when he or she is being recorded. As to that interest, PVA argues (p. 47) that "guaranteed notice of being recorded" is "not a recognized exception to the First Amendment . . . ." But the District Attorney is not arguing for any such "exception," but rather is demonstrating that the governmental interest supporting the law is significant, as called for under intermediate scrutiny. In view of the captivity of those depicted in a surreptitious recording, the Commonwealth's interest is indeed significant.

Martin, for his part, argues (pp. 34-39) that the Commonwealth's asserted interest is conjectural. He criticizes (pp. 36-37 & n.19) the District Attorney for not supplying studies, surveys, data, and the like to demonstrate the need for the Anti-Wiretap Statute. But, although such data is sometimes necessary to make out an "actual problem in need of solving," Rideout v. Gardner, 838 F.3d 65, 72 (1st Cir. 2016), the existence of a governmental interest can, as here, be shown by "long history, substantial consensus, and simple common sense." Burson v. Freeman, 504 U.S. 191, 211 (1992). First, history reveals that the law has long viewed eavesdropping and other surreptitious modes of information gathering as opprobrious and has singled them out for restrictive treatment as a matter of both

criminal law and tort.  See, e.g., Commonwealth v. Publicover, 327 Mass. 303, 305 (1951) (earlier version of Anti-Wiretap Statute represents "but a development dealing with a modern phase of eavesdropping, which was a crime at common law"); 2 Francis Wharton, CRIMINAL LAW § 1718 (12th ed. 1932) (eavesdropping, consisting of "secretly listening" in "places where persons meet for private intercourse" and then "tattling," is indictable at common law); McDaniel v. Atlanta Coca-Cola Bottling Co., 60 Ga. App. 92, 2 S.E.2d 810, 816-17 (1939) (plaintiff states tort claim where listening device was covertly installed in her hospital room); Rhodes v. Graham, 238 Ky. 225, 37 S.W.2d 46, 47 (1931) (plaintiff states tort claim where his telephone line was covertly tapped); cf. Thayer v. Worcester Post Co., 284 Mass. 160, 163 (1933) (affirming dismissal of tort claims where photograph, taken in public place and published by defendant, "was not taken

surreptitiously or without [plaintiff's] knowledge and consent").[8]  Second,

consensus is present in the fact that the Anti-Wiretap Statute has existed in some

form since 1920, and in its current form since 1968, and has never seriously been

challenged as contrary to the First Amendment prior to the present cases.  Third,

common sense reveals that public employees, especially police officers, are

routinely called upon to perform delicate tasks and to have delicate

conversations—including with private citizens—wherever the need arises,

including in spaces accessible to the public.

Martin suggests (p. 37) that the Commonwealth's interest in the Anti-

Wiretap Statute is more circumscribed, primarily serving to protect police officers

but not third parties.  But the sources Martin cites (one police department's training

materials; police reports and charging documents associated with that same

---

[8] Amicus curiae the Electronic Frontier Foundation cites (p. 26) California law for the proposition that "the invasion of privacy tort does not bar secret audio recording of a conversation in public that can be heard by other people."  But the law on that point is more nuanced that the amicus suggests and, like many aspects of the present cases, depends on surrounding facts and circumstances.  See, e.g., Lieberman v. KCOP Television, Inc., 110 Cal. App. 4th 156, 169, 1 Cal. Rptr. 3d 536, 544 (2d Dist. 2003) ("The concept of privacy is relative.  Whether a person's expectation of privacy is reasonable may depend on the identity of the person who has been able to observe or hear the subject interaction.  The presence of others does not necessarily make an expectation of privacy objectively unreasonable, but presents a question of fact for the jury to resolve."); Restatement (Second) of Torts § 652B, cmt. c (1977) ("Even in a public place, however, there may be some matters about the plaintiff . . . that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters").

department) do not define the Commonwealth's interest, where the Legislature's commission, in recommending enactment of the statute, directly spoke to the interest underlying the statute. 1968 Mass. Senate Rep. No. 1132 at 11 (Cole & Homans, concurring) ("At the very least the individual should himself be able to determine who should have authority to mechanically reproduce his words."). Martin also criticizes (pp. 35-37, 38) the Statute's legislative history for not specifically addressing the Commonwealth's interest in the Statute vis-à-vis police officers. But the Anti-Wiretap Statute is a generally-applicable law that serves the same common interest vis-à-vis all citizens. Finally, Martin argues (pp. 38, 39) that the Commonwealth's interest is insubstantial with respect to people who voluntarily choose to converse with a police officer in public, because "no one assumes that a police officer will forget what is said to [her]." But, even if such a voluntary conversationalist expects the police officer to memorialize what he says, he does not necessarily expect his remarks to be surreptitiously recorded by a third party for disclosure to others; he remains a "captive" of the third party eavesdropper and entitled to protection.

**B.    The Statute Is Narrowly Tailored to Serve the Commonwealth's Interest.**

The issue of narrow tailoring arises in two contexts in these appeals. First, in response to the District Attorney's appeal, Martin argues that the Anti-Wiretap Statute is not narrowly tailored with respect to communications made by police

officers in public spaces, a subset of the claim on which the District Court granted relief. Second, as part of its cross-appeal, PVA argues that the Anti-Wiretap Statute is not narrowly tailored with respect to communications made without a reasonable expectation of privacy, a claim that the District Court dismissed.

### 1. The Statute Is Narrowly Tailored With Respect to Communications Made By Police Officers in Public Spaces.

Martin argues (pp. 41-42) that the Anti-Wiretap Statute is not narrowly tailored with respect to communications made by police officers in public spaces because the Statute's application is not limited to unknowing civilian bystanders. But the Commonwealth's interest is in assuring that <u>all</u> citizens are aware of when they are being recorded, even though the District Attorney has highlighted the surreptitious, nonconsensual recording of nearby civilians in the present cases to demonstrate that the Statute possesses a legitimate sweep within the scope of the plaintiffs' claims. Police officers, no less than civilians, are routinely called upon to perform delicate tasks, and to have delicate conversations, in public, and they likewise have an interest in being aware of when they are being recorded.

Martin also argues (p. 42) that the government "has other tools available" to vindicate its interest in ensuring that people are aware of when they are being recorded. But, under intermediate scrutiny, the "narrow tailoring" inquiry asks not whether other methods of regulation are available, but rather whether the governmental interest "would be achieved less effectively absent the [chosen]

regulation." Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 744 (1st Cir. 1995) (quoting Ward, 491 U.S. at 799). Here, it plainly would be.

### 2. The Statute Is Narrowly Tailored With Respect to Communications Made Without a Reasonable Expectation of Privacy.

As part of its cross-appeal, PVA argues (pp. 46, 49-50, 59) that the only way to appropriately tailor the Anti-Wiretap Statute is to confine its prohibition of surreptitious recording to conversations that occur without a reasonable expectation of privacy. PVA claims that the District Court erred in dismissing (A. 80-84) its claim to that effect. This argument suffers from two flaws.

First, as discussed (see pp. 11-12 above), PVA is wrong to assume that the Commonwealth's interest is to insulate private conversations from being recorded. Rather, the Commonwealth's interest is to assure that all persons are aware of when they are being recorded, an interest that does not require the presence of a reasonable expectation of privacy.

Second, as the District Court correctly pointed out, A. 82-84, even if the Commonwealth's interest is construed as "protect[ing] conversational privacy," to impose a "reasonable expectation of privacy" condition on the Anti-Wiretap Statute is to insist on the least restrictive means of regulating electronic eavesdropping—a standard more stringent than the "narrow tailoring" required under intermediate scrutiny. See McCullen v. Coakley, 573 U.S. 464, 486 (2014).

Accordingly, the fact that other jurisdictions' anti-eavesdropping statutes include some sort of "reasonable expectation of privacy" condition does not make the Massachusetts Anti-Wiretap Statute unconstitutional.

> **C. The Statute Preserves Adequate Alternative Channels for Communication.**

In her principal brief (pp. 52-54), the District Attorney set out the alternative means by which the plaintiffs may gather information in aid of their expressive activities and explained why these are more than adequate under this Court's cases. In response, PVA argues (pp. 34-35) that "secret recording has no replacement" because "undercover journalism relies almost exclusively on acts of secret recording . . . ." PVA's own brief demonstrates that this is inaccurate by invoking (p. 7) the examples of muckraking journalists such as Nellie Bly and Upton Sinclair, who—as PVA rightly points out—practiced undercover journalism to great effect without the use of surreptitious audio recordings. Accord Dietemann v. Time, Inc., 449 F.2d 245, 249 (9th Cir. 1971) ("We strongly disagree . . . that the hidden mechanical contrivances are 'indispensable tools' of newsgathering. Investigative reporting is an ancient art; its successful practice long antecedes the invention of miniature cameras and electronic devices."); Shulman v. Group W Prods., Inc., 18 Cal. 4th 200, 239-40, 955 P.2d 469 (1998) ("The conduct of journalism does not depend, as a general matter, on the use of secret devices to record private conversations.").

Martin argues (pp. 44-45) that open recording is not an adequate alternative because he and Perez "do not feel safe openly recording police officers performing their duties in public based on their prior experiences." Martin and Perez do, however, have "a constitutionally protected right" to engage in open recording, <u>Glik</u>, 655 F.3d at 82, and so open recording should be counted among the available alternatives in the intermediate-scrutiny analysis.[9] That is not to ignore Martin's and Perez's contentions that they have, at times, been subjected to inappropriate or

---

[9] In fact, the record contains ample evidence of Martin openly recording police officers without objection from the officers. <u>See</u> A. 894 ("Martin0000055. mov" at 00:17 - 00:22 (officer turns to look at Martin and then looks away)); <u>id</u>. ("Martin0000047.mov" at 01:33 - 01:38 (officer waves at Martin)); <u>id</u>. ("Martin0000022.mov" at 00:08 - 00:13 (officer says "doing your due diligence?" and flashes Martin a thumbs-up)); <u>id</u>. ("Martin0000029.mov" at 00:39 - 00:50 (officer jokingly asks Martin to "make sure you get my good side")).

excessive responses when recording.[10,11]  If that has occurred, the answer is not to invalidate the Statute, but rather to require enhanced training for all officers concerning the "right to openly record," cf. ECF #118-9 in Martin v. Gross, No. 16-cv-11362 (Boston Police Department "training bulletin" dated Oct. 19, 2011, discussing Glik); ECF #118-11 (BPD's May 4, 2015 reissuance of same bulletin); ECF #118-13 (Mass. Municipal Police Training Committee "training guide" discussing Glik and Gericke), and to ensure that all law enforcement agencies have

---

[10] Martin identifies one incident in which he began to record a man wearing a police uniform while the man was dozing in the driver's seat of what appeared to be a private vehicle with the windows rolled up; Martin did not know whether this person was on duty when he began to record him.  A. 845-48,872.  Regardless of whether that recording was entitled to protection under Glik, the officer unquestionably responded inappropriately by exiting the car and grabbing Martin's hand and telephone.  See A.875.

Perez states (pp. 44-45) that, on one occasion in Chicago, an officer "struck [him] twice with his baton when he was openly recording [him]."  The recording of that incident reveals that Perez was part of large crowd that hurled itself into a shoulder-to-shoulder rank of police officers dressed in riot gear.  See A. 972 ("PEREZ0000004.mp4").  Perez also states (p. 45) that a Boston police officer "yelled at [him] and grabbed the recording device when he saw that Perez was open recording him." The recording of that incident and Perez's deposition testimony reveal that the officer did so only after Perez physically inserted himself between the officer and two people whom the officer was attempting to disperse from the sidewalk in front of the home of then-Secretary of State John Kerry.  A.938-43,974; A.972 ("PEREZ0000006.mp4").

[11] Martin and several amici curiae also rely on high-profile videos taken of police officers engaged in misconduct.  But, because those videos are not in the record of the present cases, it is unclear whether any of them was made in a surreptitious manner that would have implicated the Anti-Wiretap Statute had the video been made in Massachusetts.

efficient procedures to act upon citizen complaints in this regard and to sanction misconduct if it does occur.

In sum, as explained above and in the District Attorney's principal brief, the Anti-Wiretap Statute preserves ample alternatives to surreptitious audio recording for the plaintiffs. Because the statute also serves a significant governmental interest and is narrowly tailored to that end, it readily withstands intermediate scrutiny.

## III. The District Court Properly Dismissed PVA's Facial Overbreadth Claim.

PVA argues (pp. 53-60), in support of its cross-appeal, that the District Court erred by declining to invalidate the Anti-Wiretap Statute as facially overbroad. The District Court rejected PVA's facial overbreadth claim in view of the Statute's "wide range of legitimate applications." A. 86. PVA has made no record on which to challenge the District Court's recognition that the Anti-Wiretap Statute has many legitimate applications. Moreover, PVA has failed to meet another requirement of facial overbreadth claims—that the statute must apply differently to parties not before the Court than it applies to PVA. For these reasons, the dismissal of this claim should be affirmed.

Facial overbreadth is type of facial challenge that is unique to the First Amendment context. Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 n.6 (2008). It can apply where a statute is written so broadly that

there is a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984). In those circumstances, overbreadth doctrine permits the statute to be challenged even by one whose activities are within the statute's legitimate sweep, thereby relaxing the typical rule that a litigant may sue on behalf of only its own interests. United States v. Sayer, 748 F.3d 425, 435 (1st Cir. 2014); Nat'l Amusements, 43 F.3d at 748.

Even if an overbreadth claim is considered, the remedy of invalidation for overbreadth is "strong medicine that is not to be casually employed." United States v. Williams, 553 U.S. 285, 293 (2008); accord N.Y. State Club Ass'n v. City of N.Y., 487 U.S. 1, 14 (1988) (used "sparingly and only as a last resort"). So an overbreadth claimant bears onerous burdens. First, the claimant must demonstrate that the statute "will have [a] different impact on . . . third parties' interests in free speech than it has on [her own]." Taxpayers for Vincent, 466 U.S. at 801; see also Renne, 501 U.S. at 324 (requirement ensures that, where the dispute focuses on a statute's application to the claimant, overbreadth doctrine does not convert the dispute into "a means of mounting gratuitous wholesale attacks upon state and federal laws"). Second, the claimant must "demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which

the [statute] cannot be applied constitutionally." N.Y. State Club Ass'n, 487 U.S. at 14; see also Virginia v. Hicks, 539 U.S. 113, 122-23 (2003). The claimant must demonstrate that the statute's impermissible applications are "substantial," both "in an absolute sense [and] relative to its legitimate applications . . . ." Sayer, 748 F.3d at 436; see also Hicks, 539 U.S. at 122 (in considering overbreadth, a statute's impermissible applications are compared to its legitimate operation "taken as a whole").

Here, PVA has failed to demonstrate that the Anti-Wiretap Statute will affect non-parties in a manner other than how it affects PVA itself. It offers no evidence or argument to show how the Statute might apply differently to parties not before the Court. Although this ground was not relied upon by the District Court, it would have warranted dismissal of PVA's facial overbreadth claim. See, e.g., Josephine Havlak Photog., Inc. v. Village of Twin Oaks, 864 F.3d 905, 912 (8th Cir. 2017) ("It is inappropriate to entertain a facial overbreadth challenge when the plaintiff fails to adduce any evidence that third parties will be affected in any manner differently from herself."); Anderson v. Milwaukee County, 433 F.3d 975, 979 (7th Cir. 2006) (reaching same conclusion).

Nor did the District Court err by determining that any impermissible applications of the Anti-Wiretap Statute are not out of proportion to its legitimate operation. PVA has made no record on which it could challenge the District

Court's recognition (A. 86) that the Anti-Wiretap Statute has many legitimate applications. And, even if PVA could show that the Statute lacks a plainly legitimate sweep within some narrow scope, PVA has furnished no basis for making a comparison to the "whole" of the statute's operation as <u>Hicks</u> requires. As such, its facial overbreadth claim was properly dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set out in the District Attorney's principal brief, the Court should vacate the District Court's judgments and should either order each case dismissed for lack of jurisdiction or order the entry of judgment in favor of the defendants in each case.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

November 14, 2019          /s/ Eric A. Haskell
Eric A. Haskell, Bar No. 122457
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, Massachusetts 02108
617-963-2855
eric.haskell@mass.gov

# CERTIFICATES

## Certificate of Compliance

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2), because it contains 5,659 words, exclusive of those parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.


/s/      Eric A. Haskell
Counsel for D.A. Rachael Rollins
November 14, 2019


## Certificate of Service

I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system.  I certify that the following parties or their counsel of record are registered as ECF Filers using the corresponding e-mail addresses, and that they will be served electronically by the CM/ECF system:

| | | |
|---|---|---|
| Jessie J. Rossman, Esq. | Benjamin Barr, Esq. | Daniel Kelly, Esq. |
| jrossman@aclum.org | ben@statecraftlaw.com | dkelly@mccarter.com |
| | | |
| William D. Dalsen, Esq. | Stephen Klein, Esq. | Matthew Segal, Esq. |
| wdalsen@proskauer.com | steve@statecraftlaw.com | msegal@aclum.org |


/s/      Eric A. Haskell
Counsel for D.A. Rachael Rollins
November 14, 2019